# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

UNITED STATES OF AMERICA

v.                                                    Case No. 3:23cr78/MCR

AINSLEY J. BROWN

_____/

## FACTUAL BASIS FOR GUILTY PLEA

Defendant Brown admits that if this case were to proceed to trial, the government could prove the following facts:

Federal, state, and local law enforcement agencies in the Northern District of Florida have been investigating a multi-state drug trafficking and money laundering organization ("DTO") operating in Florida and Texas. The Florida-based subjects of the investigation, among others, were Ainsley Brown ("Brown"), Marcus Spears ("Spears"), Marco Spencer ("Spencer"), Ramon Singleton ("Singleton"), Patrick Bradley ("Bradley"), and Cory Tucker ("Tucker"). Some of the Florida-based subjects conspired with, and relied upon, Alejandro Zuniga ("Zuniga") as a source of supply for cocaine, as well as Victor Villarreal ("Villarreal") as a courier of illicitly procured United States currency in order to conceal the drugs proceeds in interstate commerce.

On August 18, 2023, law enforcement obtained federal search warrants for

1

multiple locations in the Northern District of Florida. On August 22, 2023, law enforcement executed the warrants.

The search warrants were the culmination of over a yearlong investigation into this DTO. The investigation began around January 2022, when a source of information informed law enforcement that BROWN was distributing large quantities of cocaine that he received from a source of supply in Texas. The source of information detailed how BROWN would obtain five kilograms of cocaine at a time from his source in Texas, store the product at his business, "All Gas No Brakes Paint and Body (AGNB)," and distribute the product to lower members of his drug trafficking organization, including TUCKER. One of BROWN's sources of supply was identified as SPEARS, and BROWN's other source of supply was identified as ZUNIGA. Law enforcement observed ZUNIGA, on multiple occasions, travel from Texas to Florida in order to broker the sale of multiple kilograms of cocaine to BROWN. Law enforcement learned this information through the interception of wire and electronic communications and verified it through the use of electronic and physical surveillance, as well as other covert investigative techniques, as described below.

On May 15, 2023, a United States District Judge signed an order authorizing the interception of wire and electronic communications to and from the cellular telephones of BROWN (TT1) and SPEARS (TT2). Immediately, law enforcement

intercepted communications between BROWN, TUCKER, and SPEARS involving the distribution of cocaine. On May 16, 2023, law enforcement conducted surveillance at AGNB and observed BROWN pay SPEARS a sum of United States currency, and then BROWN retrieve a box from SPEARS's vehicle, which contained approximately 13 ounces of cocaine. This surveillance corroborated the intercepted calls.

On May 19, 2023, law enforcement intercepted telephone communications between BROWN and ZUNIGA during which they discussed the shipment of 10 kilograms of cocaine to BROWN in Northwest Florida. BROWN told ZUNIGA that BROWN could only pay for three or four kilograms at the time of delivery. A few days later, law enforcement intercepted telephone communications between BROWN and TUCKER in which BROWN advised TUCKER that ZUNIGA had arrived in Pensacola, and TUCKER needed to help BROWN put together cocaine deals, and they also discussed other members within the DTO who would be willing to purchase large quantities of cocaine. Law enforcement surveillance confirmed the arrival of ZUNIGA at BROWN's shop, AGNB.

Between June 5, 2023, and June 6, 2023, law enforcement intercepted text message communications between BROWN and ZUNIGA regarding the shipment of 12 kilograms of cocaine to BROWN. ZUNIGA told BROWN that ZUNIGA and his cousin would be traveling to Pensacola with "two" on June 6, 2023, and the other

"ten" would arrive the next day. Law enforcement coordinated with deputies in Louisiana to conduct a traffic stop of ZUNIGA on June 6, 2023, but no contraband was found. Law enforcement subsequently intercepted telephone communications during which ZUNIGA told BROWN about getting stopped, but that "the driver with that shit" was still "good" (ZUNIGA was using what is known as a trail vehicle to actually transport the cocaine). ZUNIGA also provided BROWN with a CashApp username for BROWN to send money to ZUNIGA for the cocaine. On that same date, law enforcement observed ZUNIGA arrive at AGNB. A Hispanic male, along with ZUNIGA, placed two wrapped brick-like kilograms of cocaine on the ground in front of BROWN, who picked them up and took them inside AGNB.

On June 7, 2023, law enforcement intercepted telephone communications between BROWN and SPEARS discussing payment for cocaine and a shipment of cocaine. Law enforcement also intercepted telephone communications on June 11, 2023, and June 12, 2023, on TT1 during which BROWN contacted other individuals to see if they wanted to purchase cocaine. Those individuals were later surveilled arriving at AGNB to pick up the cocaine. Law enforcement conducted traffic stops of two vehicles and located the cocaine purchased from BROWN.

During the course of the investigation, law enforcement intercepted other telephone communications on TT1 in which BROWN communicated with identified and unidentified individuals about selling the cocaine he had acquired, which was

4

corroborated through surveillance at AGNB. The investigation revealed ZUNIGA was, by getting paid by BROWN for the cocaine he provided, utilizing the interstate transfer of monetary instruments, specifically United States currency, by vehicle and mobile payment applications. That is, all those named in the indictment were conspiring to both distribute cocaine and launder drug money. During the course of the investigation, law enforcement intercepted numerous text message communications between ZUNIGA and BROWN in which ZUNIGA instructed BROWN on which CashApp account(s) to use and inquiring with BROWN about when BROWN was going to pay the rest of the money owed.

On June 20, 2023, Marco SPENCER, a kilogram-level cocaine distributor in the DTO, was arrested and interviewed by law enforcement. SPENCER confirmed inculpatory information about ZUNIGA as a source of supply for cocaine. SPENCER indicated that he would meet ZUNIGA at locations in Pensacola, Florida, and ZUNIGA would provide the narcotics.

After BROWN was arrested on August 22, 2023, he was interviewed by law enforcement and implicated ZUNIGA by describing his involvement as BROWN's source of supply as detailed above.

BROWN agrees that the charged conspiracy in Count One, in which he was involved and foresaw, involved between 15 – 50 kilograms of cocaine. BROWN further agrees the indictment, which is incorporated herein, is true and accurate.

# ELEMENTS OF THE OFFENSES

The elements of conspiracy to distribute and possess with intent to distribute 5 or more kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A)(ii), and 21 U.S.C. § 846, as charged in Count One, are:

*First:* Two or more people in some way agreed to try to accomplish a shared and unlawful plan to distribute and possess with intent to distribute 5 or more kilograms of cocaine;

*Second:* The defendant knew the unlawful purpose of the plan and willfully joined in it; and

*Third:* The object of the unlawful plan was to distribute and possess with intent to distribute cocaine in the charged amount.


The elements of conspiracy to utilize a telephone communication facility in violation of 21 U.S.C. § 843(b) and §846, as charged in Count Two, are:

*First:* The defendant used a communication facility such as a cellular telephone;

*Second:* The defendant used the facility while committing or helping to commit the crime charged in Count One; and

*Third:* The defendant acted knowingly and intentionally.

The elements of the Conspiracy to Commit Money Laundering in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 1957(h), as charged in Count Three, are:

*First:* Two or more people in some way agreed to try to accomplish a shared and unlawful plan to conduct unlawful financial transactions as charged;

*Second:* The defendant knew that the money or property involved in the transactions were the proceeds of some kind of unlawful activity and willfully joined the conspiracy;

*Third:* The money or property did come from a conspiracy to distribute and possess with intent to distribute cocaine and implicated interstate commerce as charged.

JASON R. COODY
United States Attorney

_____
CHRISTOPHER CRAWFORD
Attorney for Defendant
Florida Bar No. 0087755
15 W La Rua Street
Pensacola, Florida 32502
(850) 432-7726

_____
DAVID L. GOLDBERG
Assistant U.S. Attorney
Northern District of Florida
Member of the Maryland Bar
21 East Garden Street, Suite 400
Pensacola, Florida 32502
(850) 444-4000

10·27-23
_____
Date

10|31|23
_____
Date

_____
AINSLEY J. BROWN
Defendant

DE  L for JSE
_____
JESSICA S. ETHERTON
Assistant U.S. Attorney
Northern District of Florida
Florida Bar No. 0070554
21 East Garden Street, Suite 400
Pensacola, Florida 32502
(850) 444-4000

10-27-23
_____
Date

10|31|23
_____
Date

7